Filed 11/29/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>MARK DAMON FOLEY,<br><br>      Defendant and Appellant. | C097140<br><br>(Super. Ct. No. 94F617) |

APPEAL from a judgment of the Superior Court of Shasta County, Daniel E. Flynn, Judge. Reversed.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brook A. Bennigson and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court appointed the same attorney (counsel) to represent Mark Damon Foley (defendant) and Raymond Edward Gladden, who had been a codefendant in the underlying criminal trial, at a consolidated evidentiary hearing after both had filed separate petitions for resentencing. Both men were not the actual killer, but both had

1

been convicted of murder on a felony-murder theory. At the hearing, to save the murder convictions, the prosecution was required to prove that defendant's and Gladden's individual participation in the underlying felony of kidnapping made them major participants in the kidnapping and that they acted with reckless indifference to human life. The prosecution argued those elements were satisfied for defendant and Gladden. Counsel then argued factors she considered favorable to defendant and also argued factors favorable to Gladden. But the same factors did not favor both, and counsel stated Gladden "certainly [had] the stronger petition." The court granted Gladden's petition only.

We reverse the denial of defendant's petition because the court violated defendant's constitutional right to conflict-free representation. We remand for a new evidentiary hearing.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Underlying Crimes*

In 1995, defendant and two codefendants, Gladden and Patrick Francis Cummings, were convicted of first degree murder arising out of a plot to kidnap, assault, and extort Duane McBroome. Cummings was the actual killer. In both the trial and direct appeal, defendant and Gladden had separate counsel. We summarize the facts of the crimes based on our prior opinion in the direct appeal because the parties stipulated to these facts at the evidentiary hearing. (*People v. Foley* (Sept. 30, 1999, C022388 & C022361) [nonpub. opn.].)

Defendant spent time in prison with Gladden, Cummings, and McBroome at various times during the 1980s and 1990s. While out on parole, McBroome bought methamphetamine from Gladden on credit but never paid him back. The two also developed a conflict concerning McBroome's former girlfriend. After defendant was released from custody, he acted as a middleman and debt collector for Gladden's drug

2

business.  Gladden tasked defendant with collecting $1,800 from McBroome and told defendant he wanted McBroome's front teeth knocked out.  Defendant "drove around looking" for McBroome and "generally carried a gun."  After Cummings was released from custody, he began assisting defendant in the search for McBroome.

On January 31, 1994, defendant ran into McBroome in a parking lot while McBroome was negotiating various drug deals.  Defendant yelled to McBroome: " 'Come here.  I want to talk to you.' "  When McBroome did not respond, defendant told him: " 'I will cap you [shoot you] if I have to right here.' "  Defendant then pointed a gun at McBroome and his driver, got into the driver's car with McBroome, and told the driver that he would not be hurt as long as he drove them where he was told.  Defendant directed the driver to the house where Cummings was staying and mentioned he was being paid $1,000 to take McBroome to someone.

At the house, defendant and McBroome went inside and the driver initially stayed in the car.  A woman whom we will refer to as Cummings' girlfriend was also at the house, as was defendant's girlfriend.  The driver eventually joined them inside, and the group used methamphetamine together.  Defendant held his gun on his lap while he and McBroome talked about their time in prison.  At some point, defendant became angry when he perceived that the driver was becoming too friendly with his girlfriend.  Defendant waved the gun at the driver and yelled at him to stop " 'hitting on his old lady.' "  Defendant's girlfriend left the house.  Sometime later, McBroome's former girlfriend and Cummings arrived.  McBroome and his former girlfriend yelled at each other.  Defendant and Cummings briefly went into the kitchen together.  Cummings' girlfriend asked Cummings to get everyone out of the house.  Defendant and Cummings told the women to go into another room.  Cummings picked up defendant's gun, walked up to McBroome, knocked him out of his chair with a hard blow to the head, followed by a second blow, and then shot him in the chest.  After shooting McBroome, Cummings

3

picked him up, slammed him into a window, and threw him on the ground, where he died from the gunshot wound.

Defendant took the gun with him when he left the house and threw it out the window while driving to inform Gladden. Cummings later disposed of McBroome's body and told Gladden what happened. Defendant told two separate people that he wanted to find and kill the driver "to make sure he did not talk" and "because [he] had been a witness to the murder."

## II

### *The Petitions for Resentencing*

In 2019, defendant and Gladden filed separate petitions for resentencing under Penal Code section 1172.6.[1] The trial court consolidated the petitions and appointed counsel to represent both men at the consolidated evidentiary hearing.

At the consolidated hearing, the prosecution and counsel stipulated to the facts in our prior opinion. Counsel then argued that neither defendant nor Gladden intended for McBroome to be killed: "at the worst," counsel argued, they intended for a kidnapping to occur. McBroome was "doing drugs and partying" with defendant and others when "Cummings on his own initiated a conflict . . . and thereafter killed him." Counsel disputed that the evidence supported a conclusion that Gladden engaged defendant to collect a debt from McBroome but argued that even if the trial court found that to be the case, and further found that defendant kidnapped McBroome for purposes of extortion, there was no evidence that either defendant or Gladden intended McBroome's death.

---

[1] Undesignated statutory references are to the Penal Code. Defendant petitioned for resentencing under former section 1170.95. Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6 without substantive changes. (Stats. 2022, ch. 58, § 10.) We shall refer to the current section throughout this opinion.

Counsel then argued that Cummings had "a personal vendetta" against McBroome and decided "on his own . . . to take [defendant's] gun and shoot him."

With respect to Gladden specifically, counsel pointed out that Gladden was not present at the scene of the murder, did not supply a weapon, did not assist in the concealment of the murder weapon or the body, and did not direct either defendant or Cummings to kill McBroome. Counsel argued that, "at the worst," Gladden asked defendant to knock McBroome's teeth out, not kill him. Counsel also argued "you don't kill your customers or you wouldn't be a very profitable drug dealer."

Turning to defendant, counsel argued that while defendant brought McBroome over to the house where Cummings was staying, and apparently had Cummings summoned to the house, any kidnapping ended when they were in the kitchen and Cummings took his gun. Counsel concluded by arguing that even if Gladden engaged defendant to collect a debt from McBroome, "it wasn't reasonably apparent to them at the time that Mr. Cummings would come in, take [defendant's] gun, and kill him."

The trial court then stated that it did not see evidence that either defendant or Gladden were the actual killer or possessed an intent to kill and asked the prosecutor to address whether they were major participants in the underlying felony and acted with reckless indifference to human life. The prosecutor argued those elements were satisfied for both defendant and Gladden.

It was then counsel's turn. The bulk of counsel's response addressed Gladden's level of culpability and acknowledged Gladden "certainly [had] the stronger petition." Counsel's only response with respect to defendant was that McBroome "ripped off most of the drug dealers in the area, and many people were gunning for him," defendant "was enlisting all those people to get after him" but "didn't supply them with weapons," and defendant "let go of his own gun." Counsel argued defendant and McBroome were "just partying like that's what their general associations involve, not violence." Counsel

5

concluded by repeating that "there [was] no indication . . . that either [defendant or Gladden] entered into some type of agreement" to have McBroome killed.

The trial court took the matter under submission and then issued a ruling granting Gladden's petition and denying defendant's petition. The court concluded that defendant "was a major participant (in truth the principal in) the underlying felony, and acted with reckless indifference to human life."

On appeal, defendant contends the trial court committed reversible error by violating his state and federal constitutional right to conflict-free counsel. Alternatively, he contends the evidence is insufficient to support the trial court's finding he acted with reckless indifference to human life. We agree with defendant's first contention and, as a result, have no need to address his alternative contention.

## DISCUSSION

Defendant contends the trial court violated his state and federal constitutional right to conflict-free representation by allowing counsel to represent him and Gladden at the consolidated evidentiary hearing on their petitions for resentencing. We agree.

Section 1172.6 requires appointment of counsel "upon the filing of a facially sufficient petition." (*People v. Lewis* (2021) 11 Cal.5th 952, 970.) If the petitioner makes a prima facie showing of entitlement to relief, as defendant did here, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, "the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*People v. Myles* (2021) 69 Cal.App.5th 688, 696.)

In addition to the statutory right to the assistance of counsel in pursuit of relief under section 1172.6, a criminal defendant has a constitutional right to counsel, guaranteed by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, " 'at all critical stages of the criminal process' " (*Marshall v. Rodgers* (2013) 569 U.S. 58, 62), including sentencing and resentencing

6

hearings. (*People v. Rouse* (2016) 245 Cal.App.4th 292, 296-297; see also *People v. Cutting* (2019) 42 Cal.App.5th 344, 348.)

The parties assume this constitutional right applies in the context of a resentencing petition under section 1172.6. We conclude it does, at least where the trial court issues an order to show cause and holds an evidentiary hearing. While a defendant generally "has no constitutional right to counsel with respect to statutory postconviction motions seeking a reduction in sentence" (*People v. Rouse*, *supra*, 245 Cal.App.4th at p. 298), the trial court does not issue an order to show cause and hold an evidentiary hearing under section 1172.6 unless the defendant has made a prima facie showing of entitlement to relief. The situation is therefore similar to a postconviction habeas corpus proceeding where the appointment of counsel is demanded by due process concerns if the petition attacking a judgment's validity states a prima facie case leading to an order to show cause. (See *People v. Frazier* (2020) 55 Cal.App.5th 858, 865.)

Having reached this conclusion, we turn to whether counsel's dual representation at the evidentiary hearing violated defendant's constitutional right to counsel. To establish such a violation, defendant must show: (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance (the deficient performance requirement), and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different (the prejudice requirement). (*People v. Johnson* (2018) 6 Cal.5th 541, 578.)

Beginning with the deficient performance requirement, an actual conflict of interest between codefendants may arise where, for example, counsel for multiple defendants "might injure one defendant by arguments in favor of another." (*People v. Odom* (1965) 236 Cal.App.2d 876, 878.) Determining whether counsel's performance was adversely affected by such a conflict requires an inquiry into whether counsel " 'failed to represent defendant as vigorously as he [or she] might have, had there been no

7

conflict. [Citation.] In undertaking such an inquiry, we are . . . bound by the record.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 418 (*Doolin*).)

In *People v. Chacon* (1968) 69 Cal.2d 765 (*Chacon*), our Supreme Court held concurrent representation of multiple defendants during a capital murder trial violated the state and federal constitutional rights to effective assistance of counsel. (*Id*. at pp. 775-777.)[2] Explaining that an actual conflict between the codefendants existed, the court stated: "Conflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant. Often the strongest argument that separate counsel can make on the issue of penalty is that his [or her] client was less culpable than the others and that [the client], at least, should not be executed. In addition, [counsel] must be free to stress particular mitigating elements in his [or her] client's background or other individual mitigating factors that may not apply to a codefendant. Counsel representing more than one defendant is necessarily inhibited in making such arguments and in presenting evidence to support them. [Counsel] cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of the lesser penalty. Moreover, the conflict is not limited to the trial on the issue of penalty, for normally the same jury determines both the issue of guilt and the issue of penalty. Counsel must therefore conduct the defense throughout the entire trial to stress evidence and considerations to support the lesser penalty. Counsel appointed to represent more than one defendant when the jury must fix the penalty for each is forced . . . to treat his [or her] clients as a group and to abandon arguments that would apply to each separately." (*Chacon*, *supra*, 69 Cal.2d at p. 775.) The court then concluded the attorney's performance was adversely

---

[2]     *Chacon* was disapproved in *Doolin* "to the extent that [it] can be read to hold that attorney conflict claims under the California constitution are to be analyzed under a standard different from that articulated by the United States Supreme Court." (*Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.)

affected by the conflict because the attorney was unable to make individualized "arguments in favor of each defendant to dissociate him from his codefendants' cases . . . ." (*Id*. at p. 776.)

Here, the trial court was tasked with determining whether the prosecution had proven beyond a reasonable doubt that defendant was a major participant in the underlying felony with reckless indifference to human life. Several interrelated factors are relevant to the analysis. As in *Chacon*, an attorney representing a defendant at an evidentiary hearing under section 1172.6 must be free to stress particular factors that she believes favor her client even where those same factors might not apply to a codefendant. And where, as here, the attorney represents more than one defendant seeking relief under the new law, she "is necessarily inhibited in making such arguments and in presenting evidence to support them" and "cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of" having his murder conviction vacated. (*Chacon*, *supra*, 69 Cal.2d at p. 775.) Indeed, here, counsel explicitly acknowledged that Gladden was more deserving of reduced punishment, noting that he "certainly [had] the stronger petition." And each factor that she argued in favor of Gladden that did not also apply to defendant put her argument for Gladden at odds with defendant's interests. We conclude defendant has established that counsel labored under an actual conflict of interest that adversely affected her performance at the evidentiary hearing on defendant's resentencing petition.

Turning to the prejudice requirement, a limited presumption of prejudice arises where defendant demonstrates that his lawyer " 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 692, quoting *Cuyler v. Sullivan* (1980) 446 U.S. 335, 350.) Because defendant made such a showing, we must presume prejudice occurred and reverse the order denying defendant's petition for resentencing. As our Supreme Court has stated, " 'the high probability of prejudice

9

arising from multiple concurrent representation, and the difficulty of proving that prejudice' justifie[s] application of the presumption." (*Doolin*, *supra*, 45 Cal.4th at p. 418, quoting *Mickens v. Taylor* (2002) 535 U.S. 162, 175.)

DISPOSITION

The order denying defendant's petition for resentencing under Penal Code section 1172.6 is reversed, and the matter is remanded for a new hearing on defendant's petition with conflict-free representation.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
BOULWARE EURIE, J.